# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SAUNTORE THOMAS,** *an individual*

       Plaintiff,

vs.

**ENTERPRISE LEASING COMPANY OF DETROIT, LLC,**

       Defendant.

Case No.  19-cv-11550
Hon.  Mark A. Goldsmith
Mag. Mona K. Majzoub

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**BUTZEL LONG, P.C.**
Carey A. DeWitt (P36718)
James S. Rosenfeld (P39434)
Attorneys for Defendant
41000 Woodward Avenue
Stoneridge West Building
Bloomfield Hills, Michigan 48304
(248) 258-1616
dewitt@butzel.com
rosenfeld@butzel.com

_____

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

A civil action between Plaintiff and Defendant arising out of the same transaction or occurrence alleged in this Complaint has been previously filed in United States District Court, Eastern District of Michigan, Southern Division, where it was given Docket No. 18-cv-13250, *Amber Williams, et al v. Enterprise Leasing Company of Detroit, LLC,* and was assigned to Judge Mark A. Goldsmith. The action is closed.

Plaintiff Sauntore Thomas, by his attorneys Deborah Gordon Law, complains against Defendant as follows:

## Jurisdiction and Parties

1.      This is an action by Plaintiff Sauntore Thomas against Defendant Enterprise Leasing Company of Detroit, LLC ("Enterprise") for subjecting Plaintiff to a hostile work environment on the basis of his race and retaliating against him.

2.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 28 U.S.C. § 1441.

3.      Plaintiff resides in the Eastern District of Michigan.

4.      Defendant Enterprise is a foreign corporation doing business in this District.

## Background Facts

5.      Defendant Enterprise is an automobile rental company located at 338 Lucas Drive, Detroit, MI 48242.

6.      Plaintiff began his employment with Defendant in March 2011, and last held the position of Return Agent.

7.      Plaintiff is African American.

8.      Plaintiff's work performance records have been at all times satisfactory or better.

9.      Plaintiff was supervised by a Shift Manager, Area Manager, Rental Regional Manager, Station Manager, and various other management officials.

10.     For at least two years, Defendant created a hostile work environment based on race by discriminating against and harassing customers and allowing customers to harass non-white employees, including Plaintiff, on the basis of race.

### *Defendant Discriminates Against Non-White Customers On the Basis of Race*

11.     Managers instructed employees to tell African American and other non-white customers that no cars are available, when cars are available and are then rented to white customers.

12.     Managers instructed employees, including Plaintiff on Defendants' "policy" that they are not permitted to rent luxury or high-end cars to African American or non-white customers, even though African American and non-white customers qualify to rent luxury vehicles and these vehicles are available.

13.     Managers instructed employees to lower or waive deposits on rental vehicles for white customers, but to not extend theses courtesies to African American and other non-white customers.

14.     When employees asked managers to assist with customers, managers asked what the customer's race was before assisting them, and indicated their preference to assist white customers.

15.     Managers referred to African American customers as "locals." Managers instructed employees, including Plaintiffs, that "locals" are required by company "policy" to have the cost of the rental plus a $500 deposit available on a major credit card. This "policy" is frequently not applied to white customers.

16.     Managers have also referred to African American customers by other derogatory terms, and have called the police on African American customers without any justification.

17.     Managers instructed employees that white customers are allowed to rent vehicles without presenting a driver's license, but African American customers' identification documents are closely scrutinized.

18.     Managers stated that they did not expect non-white customers to return the vehicles they rent, and as a result, non-white customers were classified and treated as "high risk" customers.

19.     African American and non-white customers were frequently treated with disregard and disrespect by managers, but white customers received high-quality customer service.

20.     The open atmosphere of hostility towards African Americans created by Defendant created a work environment permeated with discriminatory intimidation, ridicule, and insult that was so severe and pervasive that it altered the

conditions of Plaintiff's work environment, and created an abusive working environment for him.

21.     Defendant made no secret of its hostility and disdain towards African Americans, including Plaintiff. This caused Plaintiff anguish and pain, humiliation, embarrassment, outrage, and significantly interfered with his ability to do his job.

22.     When Plaintiff brought this discrimination and hostile environment to the attention of Defendants' management and human resources, his complaints were alternately ignored or met with retaliation.

### *Defendant Permitted Customers to Harass and Discriminate Against Employees, Including Plaintiff, on the Basis of Race*

23.     Managers refused to address or discourage customers when they made racially discriminatory and harassing comments to employees, including Plaintiff.

24.     Employees assigned as Return Agents, and to the outside booths, including Plaintiff, were frequently harassed and threatened by customers.

25.     On multiple occasions, Plaintiff's managers proceeded to rent vehicles to customers who physically threatened him, and who referred to him using racial slurs.

26.     On or about July 17, 2018, Plaintiff sent an email to Defendant's human resources generalist, notifying her of the harassment and threatening behavior. Plaintiff's employment was terminated the very next day.

*Defendant Discriminated Against Plaintiff Based on Race and Retaliated
Against him Because of his Protected Activity*

27.    Plaintiff and other employees reported the events and actions giving rise to the hostile environment to Defendant's managers and human resources officials on a rolling basis.

28.    Plaintiff made numerous reports to human resources, and his managers and supervisors about the conditions of the hostile work environment as set forth above, to no avail.

29.    On July 3, 2018, Plaintiff filed a formal complaint alleging race discrimination.

30.    Defendant never formally responded to or investigated his claims.

31.    Approximately two weeks later, Defendant retaliated by terminating Plaintiff's employment based on a pretextual reason.

32.    Defendant treated Plaintiff far more harshly than similarly-situated white employees who did not complain of discrimination and harassment.

### COUNT I
**Racial Discrimination in Violation of the Elliott-Larsen Civil Rights Act,**
*M.C.L. 37.2102 et seq., as against Defendant Enterprise*

33.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

34.     Plaintiff was an employee and Defendant Enterprise was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2201, *et seq.*

35.     Defendant subjected Plaintiffs to a hostile work environment based on race, which ultimately culminated in his termination.

36.     Plaintiff's race was a factor in Defendant's decision to treat him less favorably with regard to the terms, conditions, and benefits of employment on the basis of race.

37.     Defendant, by its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

38.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT II**
**Retaliation in Violation of the Elliott-Larsen Civil Rights Act,** *M.C.L. 37.2102*
*et seq., as against Defendant Enterprise*

39.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

40.     Plaintiff was an employee and Defendant Enterprise was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

41.     Plaintiff engaged in conduct protected under the ELCRA including, but not limited to, opposing discrimination against customers and employees, and reporting race-based, harassing comments and actions.

42.     Plaintiff's treatment, including his termination, was retaliatory and occurred, in part, because he opposed, objected to and refused to acquiesce in discriminatory employment practices, including discrimination against customers and employees based on their race, in violation of the anti-retaliation provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

43.     The retaliation would not have occurred had Plaintiff not engaged in activity protected by the Elliot-Larsen Civil Rights Act.

44.     The actions of Defendant, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

45.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully harassed and terminated.

46.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT III
### Conspiracy to Violate the Elliott-Larsen Civil Rights Act, *M.C.L. 37.2102 et seq., as against Defendant Enterprise*

47.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

48.     Plaintiff was an employee and Defendant Enterprise was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

49.     Defendant, through its management officials, engaged in conduct prohibited by the ELCRA including, but not limited to:

a.      conspiring to aid, abet, incite, or coerce persons to violate the ELCRA;

9

b.      attempting directly and/or indirectly to commit acts prohibited by the ELCRA;

c.      willfully obstructing or preventing persons from complying with the ELCRA; and

d.      coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having aided or encouraged other persons in the exercise or enjoyment of, rights granted or protected by the ELCRA.

50.     Defendant took these actions to discriminate against customers and employees based, at least in part, on their race, in violation of the provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*

51.     The actions of Defendant, by its agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiffs.

52.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment was adversely affected, and Plaintiff was unlawfully harassed, disciplined, and suspended.

53.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and

emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT IV
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**
as *against Defendant Enterprise*

54.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

55.     At all relevant times, Plaintiff was an employee and Defendant his employer within the meanings set forth in Title IVV of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

56.     Plaintiff is a member of a protected class; he is African-American.

57.     Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of his race.

58.     Similarly situated white employees were treated better in the terms and conditions of their employment.

59.     Agents of Defendant were predisposed to discriminate against Plaintiff based on his race.

60.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

61.      As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

62.      As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT IV**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964,** as *against Defendant Enterprise*

63.      Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

64.      At all relevant times, Plaintiff was an employee and Defendant his employer within the meanings set forth in Title IVV of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

65.      Plaintiff engaged in activity protected by Title VII when he complained of and opposed unlawful racist discrimination.

66.      The retaliation by Defendants that Plaintiff experienced included his termination.

12

67.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

68.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

69.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT V
### Race Discrimination in Violation of 42 USC § 1981 as *against Defendant Enterprise*

70.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

71.     42 USC § 1981 prohibits individuals from engaging in acts of racial discrimination.

72.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

73.     Plaintiff is a member of a protected class; he is African-American.

74.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

75.     Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of his race.

76.     Similarly situated white employees were treated better in the terms and conditions of their employment.

77.     Agents of Defendant were predisposed to discriminate against Plaintiff based on his race.

78.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

79.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

80.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT VI
## Retaliation in Violation of 42 USC § 1981 as *against Defendant Enterprise*

81.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

82.     42 USC § 1981 prohibits individuals from retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination.

83.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

84.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

85.     Plaintiff engaged in activity protected by 42 USC § 1981 when he complained of and opposed unlawful racial discrimination.

86.     The retaliation by Defendant that Plaintiff experienced included his termination.

87.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

88.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

89.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

A.     **LEGAL RELIEF**

1. Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3. Exemplary damages in whatever amount Plaintiff is found to be entitled;

4. Liquidated damages in whatever amount Plaintiff is found to be entitled; and

5. An award of interest, costs and reasonable attorney fees.

**B.    DECLARATORY & EQUITABLE RELIEF**

1. An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

2. An award of interest, costs, and reasonable attorney fees; and

3. Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

Dated:  September 18, 2019             **DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

17

## JURY DEMAND

Plaintiff Sauntore Thomas, by his attorneys **Deborah Gordon Law,** demands

a trial by jury of all the issues in this cause.

Dated: September 18, 2019        **DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

       **DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com